## (December 16, 1976)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE SEYMOUR, Appellant.—Appeal from a judgment of the County Court of Chemung County, rendered January 30, 1975, upon a verdict convicting defendant of the crimes of grand larceny in the second degree and offering a false instrument for filing in the first degree. The food stamp program is administered locally. Based on information supplied by him, the Chemung County Department of Social Services issued cards to defendant enabling him to purchase such stamps and he participated in the program for approximately two years. However, when the department learned that three members of his household had been receiving income throughout the period which would have rendered defendant ineligible to derive any benefit therefrom, the criminal charges of which he now stands convicted were lodged against him. We find no merit in any of the arguments advanced by him on this appeal. Although it is Federally funded, the local agency does more than determine whether one qualifies to obtain food stamps; it issues cards which authorize their purchase. Thus, while defendant's actions may have concurrently violated some Federal statute, those cards were a "substance or thing of value" subject to the New York larceny statutes for without them he could not have purchased the stamps (Penal Law, § 155.00, subd 1). Defendant was fully apprised of the nature of the charges against him and, provided the proof was otherwise sufficient, there can be no dispute but that the value of the benefits he received through the use of

those cards far exceeded the statutory level of $1,500 (Penal Law, §§ 155.35, 155.20, subd 2, pars [a], [c]; US Code, tit 7, § 2019, subd [g]; 7 CFR 271.7 [a]). Unlike the situation presented in *People v Hunter* (34 NY2d 432), the evidence here also demonstrates that defendant would not have received any authorizations whatever during the time he engaged in the program had the true status of his household income been disclosed. Therefore, his misrepresentations on that subject were material and properly warranted an inference that he "wrongfully" obtained such cards *(People v Hunter, supra,* pp 438, 439). Defendant also asserts that the "application" he presented to the department did not constitute an "instrument" within the meaning of section 175.35 of the Penal Law. We disagree. The data he furnished was first recorded by interviewers and then subscribed by the defendant. The resulting document was, in effect, a nonnegotiable claim upon the department to issue cards which possessed a value. The department depended upon the accuracy of the statements contained therein and nothing further was required to complete the transaction. Accordingly, the completed document may be called an "application", but that characterization does not disguise the fact that it also represented an obligation on the part of the department to provide defendant with the necessary authorizations *(People v Bel Air Equip. Corp.,* 39 NY2d 48, 55). His evident intent in falsifying relevant financial information was to defraud the department and that is exactly what the statute is designed to guard against. Judgment affirmed. Sweeney, J. P., Kane, Main, Larkin and Herlihy, JJ., concur.