■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SYLVIA MARTINEZ, Appellant. [608 NYS2d 573] —Cardona, P. J. Appeal from a judgment of the County Court of Chenango County (Dowd, J.), rendered February 1, 1993, convicting defendant following a nonjury trial of the crimes of grand larceny in the third degree and offering a false instrument for filing in the first degree (two counts).

Defendant was indicted for the crimes of grand larceny in the third and fourth degrees, petit larceny and two counts of offering a false instrument for filing in the first degree. The indictment was based upon allegations that she fraudulently obtained public assistance, medical assistance and food stamps during the period October 31, 1990 to June 30, 1991, in the amount of $7,131.03, by twice failing to disclose certain assets consisting of a certificate of deposit (hereinafter CD) in the approximate amount of $60,521.43, unearned interest income on the CD and 75 shares of Getty Oil Company stock. After a nonjury trial, defendant was found guilty of grand larceny in the third degree and two counts of offering a false instrument for filing in the first degree.

Following defendant's conviction and after making restitution for the full amount of $7,131.03, defendant was sentenced by County Court to a period of five years' probation and ordered to pay restitution in the amount of $1,230, represent-

ing interest, to the Chenango County Department of Social Services (hereinafter the Department). Defendant appeals.*

Defendant contends that there was insufficient proof to sustain her conviction because the prosecution failed to prove that she received public assistance to which she was not entitled and, more particularly, with respect to the charge of grand larceny in the third degree, failed to prove that the amount of that assistance exceeded $3,000. At trial she maintained that she failed to disclose the CD as a potential asset because she believed she did not have access to it because it was pledged as collateral to secure a loan.

A person "steals" property when "with intent to deprive another of property or to appropriate the same to [herself] * * * [she] wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law § 155.05 [1]). "[F]or public assistance to be obtained 'wrongfully' it must be shown that the defendant is not entitled to it in any event. The defendant's misrepresentation must be material, and 'material' in the context of public assistance means that the defendant would have been entitled to less assistance had the true facts been known" *(People v Hunter,* 34 NY2d 432, 438; *see, People v Hubbard,* 10 AD2d 735; *People v Lofton,* 73 Misc 2d 285, 288). The People contend that the proof was sufficient to demonstrate that defendant had no entitlement to *any* of the benefits and that she therefore stole benefits in an amount exceeding $3,000 *(see, People v Stumbrice,* 194 AD2d 931, 934, *lv denied* 82 NY2d 727).

The People proved the following. At the time of defendant's original application for benefits on October 29, 1990 and at the time of her recertification for benefits in March 1991, defendant failed to reveal, even though specifically asked, the existence of the CD pledged to secure repayment of a $51,000 loan. She also failed to disclose the monthly interest income the CD generated. During the period of October 30, 1990 through April 29, 1991, defendant (her deceased husband and their child) received (along with her deceased husband and their child) benefits in the amount of $5,614.94. During this period, defendant had the right to pay off the loan at any time by cashing in the CD and receiving her equity interest in it. This equity interest constituted an available personal asset. In order to qualify for public assistance benefits, personal assets

---

* Codefendant Ralph Martinez, defendants' husband, died on August 9, 1993. We granted the People's motion to dismiss his appeal on September 17, 1993.

could not exceed $1,000; to qualify for food stamps, personal assets could not exceed $2,000; for a three-member family to qualify for medical assistance, personal assets could not exceed $5,750. On April 29, 1991, after she was told that her benefits were going to be terminated for failure to grant the Department a lien against her home, defendant cashed in the CD, paid off the loan and received $7,413.11, which she also failed to report, despite affirmations on her application and recertification forms which promised to notify the Department in the event her financial status changed in any way.

Defendant's equity interest in the CD was an available personal asset which exceeded the resource eligibility limits for benefits for defendant's family. Had defendant disclosed the existence of the $60,000 CD at the time of her original application or at the time of her recertification, the Department would have required her to cash in the CD, pay off the loan and then prove to the Department that the excess proceeds were spent in an eligible manner before she would have been entitled to receive benefits. Thus, defendant was not entitled to receive any of the $5,614.94 in benefits which she received from October 31, 1990 through April 29, 1991. Similarly, in April 1991, if defendant had reported paying off the loan and receiving the sum of $7,413.11, the Department would have required her to demonstrate that the proceeds would be used in an eligible manner before she would be entitled to receive any benefits. Thus, contrary to defendant's contention, there was proof beyond a reasonable doubt to demonstrate that she was not entitled to receive any of the $7,131.03 in benefits, amply supporting the finding that defendant stole benefits in an amount exceeding $3,000.

We also find no merit to defendant's contention that the proof was insufficient to sustain her conviction for the crime of offering a false instrument in the first degree. Defendant's original application and her recertification for benefits constituted the presentation of an instrument which contained false information or false statements within the meaning of Penal Law § 175.35 (see, People v Bentley, 106 AD2d 825, 826). As previously noted, the proof demonstrated that defendant was not entitled to receive any benefits during the period in question. Furthermore, proof of her knowledge of the value of the CD as an available asset, which should have been disclosed on the application and the recertification, is inferable from her act of cashing it in to obtain the balance proceeds after she received notice that her benefits were going to be terminated and she needed money.

We do find merit, however, in defendant's last contention that the condition of probation which required defendant to pay restitution representing interest in the amount of $1,230 was unauthorized. This Court has stated that "the amount of restitution should not exceed the sum set forth in an indictment as the fruits of the crime" *(People v Raffiani,* 83 AD2d 650; *see,* Penal Law § 65.10 [2] [g]; *Kuriansky v Professional Care,* 158 AD2d 897, *lv denied* 75 NY2d 991). Here, the indictment charged a loss to the Department in the amount of $7,131.03, the actual cost of benefits provided to defendant and her family. Defendant paid this amount in full prior to sentencing. Under these circumstances, there was no basis for County Court to direct defendant to pay interest. Accordingly, we modify the sentence imposed by deleting this condition of probation.

Mikoll, White, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is modified, on the law, by vacating so much thereof as directed restitution by defendant to the Chenango County Department of Social Services in the sum of $1,230, and, as so modified, affirmed.